INTERNATIONAL & G. N. RY. CO. v. WILLIAMS. (No. 19–2612.)

(Commission of Appeals of Texas, Section B. June 11, 1919.)

1. APPEAL AND ERROR ⬥➡1094(1)—REVIEW— INTERMEDIATE APPEAL—FINDING.

The Commission of Appeals is bound by the finding of the Court of Civil Appeals, if there is any evidence to sustain the finding.

2. MASTER AND SERVANT ⬥➡286(3)—INJURY TO RAILROAD EMPLOYÉ—DEFECTIVE DRAINWAY—JURY QUESTION.

In car repairer's action for injuries from defective drainway, the questions whether defendant railroad had invited its employés to use the ground in performance of their duties, and whether it had furnished such ground as place for them to work, held, under the evidence, for the jury.

3. MASTER AND SERVANT ⬥➡293(7)—INJURIES TO RAILROAD EMPLOYÉ—ACTION FOR DAMAGES — INSTRUCTIONS — DEFECTIVE DRAINWAY.

In car repairer's action for injuries from defective drainway involving issues of whether the ground was furnished as a place to work, and whether car repairer in performance of his duties properly walked over such land, court's charge held to properly present issues to jury.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by T. M. Williams against the International & Great Northern Railway Company. Judgment for plaintiff affirmed by Court of Civil Appeals (160 S. W. 639), and defendant brings error. Affirmed.

Chambers & Baskins, of Cameron, Doremus, Butler & Henderson, of Bryan, and Wilson, Dabney & King, of Houston, for plaintiff in error.

Henderson, Kidd & Gillis, of Cameron, and J. W. Garner, of Rockdale, for defendant in error.

SADLER, J. For convenience, the parties will be designated as in the lower courts.

It is contended by the defendant that the court should have peremptorily instructed the jury to find for it; that the evidence is insufficient to require the submission of the cause to the jury. It also contends that the court erred in paragraphs 5 and 6½ of its charge, and in refusing to give special charge No. 4. Error is also assigned with reference to the admission of the testimony.

The original opinion and opinion on rehearing will be found in 160 S. W. 639. The Court of Civil Appeals there presents a statement of the pleadings and a collation of the facts; however, the facts will be referred to herein briefly to be considered in connection with the facts as set out in the opinion of the Court of Civil Appeals. -

Opinion.

The main contention of the defendant is that there is no evidence in the record showing that the defendant furnished the particular ground over which plaintiff was traveling at the time of his injury as a place where plaintiff should work. It is also contended that there is no evidence showing that the defendant had any control of the drainway in which plaintiff is alleged to have been injured. The contention is further that, while the evidence shows that the plaintiff received his injuries while engaged in the service of the defendant and while actually in the performance of his duties, he chose of his own volition to travel over ground which was not under the control of the defendant and at a place which was not furnished to him by the defendant as a place to work or as a place over which he should travel in performing his service to it.

If the record sustains the contentions of the defendant, then the court should have peremptorily instructed the jury to find for it.

[1] The Court of Civil Appeals, after summarizing the facts, finds that the evidence was sufficient to require the submission of the cause to the jury. We are bound by that finding if there is any evidence to sustain the finding.

In connection with the statement contained in the opinions of the Court of Civil Appeals here brought under review, the record discloses that about the year 1903 the railway company erected the hotel; that shortly after its completion it was leased to a Mrs. Can-

---

non. On her request the railway company caused its section men to dig a drainway about 160 or 210 feet in length, about 12 inches wide, leading from the ground under the northeast corner of the hotel easterly to a cesspool. The depth of this drainway would range from 12 inches under the hotel, to 3½ feet where it connected with the cesspool. The bridge gang of defendant placed in this drainway a wooden box made of timbers 2x12 and practically extending the entire length of the drain. The evidence shows that for a portion of the way this box perhaps was flush with the top of the ground, and for the remainder it was covered with dirt. The ground upon which the hotel and its outbuildings, together with this drainway were situated, belonged to defendant. East of the hotel and its appurtenant buildings for quite a distance there was a plot of ground lying between the Gulf division and switch track No. 6. This was covered with a heavy growth of Johnson grass from knee to waist high, and there were a few trees near the the apex of the angle formed by the switch track and the Gulf division and some distance from the hotel. These trees were east of the cesspool and were set out by the defendant at the request of Mrs. Cannon. This situation of the premises existed from about 1904 to the date of plaintiff's injury in 1911.

The testimony of several witnesses tended to show that from 1904 to 1911 the employés of the defendant, in the performance of their various duties to it, passed over this Johnson grass plot at various places. There is testimony that the Johnson grass plot was rough, but the testimony of plaintiff is to the effect that he and his helpers and other employés of the defendant, for about three years prior to his injury and up to that time, commonly used this grass plot in passing backward and forward from one place to another on the various tracks in the performance of their duties to defendant. The testimony shows that plaintiff had crossed this plot at various places perhaps from 100 to 200 times during his employment as car repairer. There is no evidence showing that plaintiff ever crossed the tract of ground in the exact route traveled by him at the time of his alleged injury. The plaintiff testified, and there is nothing in the record to contradict it, that his duties called upon him to repair cars and to examine cars at various and sundry places on the different tracks maintained by the defendant at Valley Junction; that there was no definite fixed place where he should work; that he worked all over the tracks and yards. There is testimony showing that he could not go from place to place in the performance of his duties by traveling up and down the right of way or tracks, since they were always full

of cars. There is no testimony to the contrary.

According to his testimony, plaintiff did not know of the existence of the drainway, and there is no evidence showing knowledge on his part, unless it might be gathered from very slight circumstances. The railway company knew of the drainway, its location and manner of construction, and, from the character of timber used in building the drainway, the jury might reasonably conclude that it was charged with knowledge of the defective condition of the drainway; the evidence showing that the timbers had rotted away at the point where plaintiff was injured.

During the time plaintiff was working for the defendant as car repairer at Valley Junction, the hotel and outbuildings were being operated under lease contracts, and at the time of the injury was leased by defendant to the Gulf Coast News Company. The rental contract covered that portion of the "building at Valley Junction known as the International & Great Northern Railway Company's passenger depot, which have been used and are used now and set apart for lunch stands, dining rooms, kitchens and eating house purposes." It provided:

"That the second party (the lessee) should maintain an eating house, lunch counter and hotel at Valley Junction."

One clause provided:

"That the portions of said depot building mentioned in section one hereof shall be designated and set apart by the first party or his authorized agents, for use and possession of the second party and no other portion of said buildings other than those designated and so set apart should be within the terms of this lease."

Further:

That "the second party shall make no changes on or about the buildings without first obtaining the written consent of the first party," and that "no nuisance shall be permitted or allowed within or about any of said premises herein leased."

It will be noticed that the rental contract does not describe the ground upon which the buildings covered by the lease contract are situated, nor does it mention the drainway.

It is believed that the contract is sufficient to cover the hotel buildings and outbuildings connected therewith, together with that portion of the ground upon which the buildings were situated requisite to the proper and necessary enjoyment of the same. There is nothing in the contract to show whether or not the lease covered that portion of the plot of ground lying east of the building and into which the drain extended and on which the cesspool was situated, over a portion of which ground the plaintiff was traveling at the time of his alleged injury. The lease is believed to be sufficient to

carry with it the right to use the drainway. and cesspool in connection with the hotel and to give to the lessee an easement through the portion of ground, if any, not covered by the lease and lying between the extreme eastern building and the cesspool.

From this statement of the evidence, taken in connection with the statement in the opinion of the Court of Civil Appeals, it will be seen that there are clearly issues of fact to be determined.

To assist in understanding the facts of this case, the following plat of the premises will be of material aid:

[2] The location of the switch tracks connecting the Gulf division and the Ft. Worth division, the location of the ground contained within the triangle formed by these switch tracks, the relationship of the main line tracks and the switching tracks, the location of the hotel and adjoining buildings, the fact that defendant's employés were called upon in the performance of their duties to pass from various points on one track to points on the other track, and that the grass plots intervened between the different places where the work might be performed, is sufficient, in our opin-

SKETCH SHOWING HOTEL AND ENVIRONS
AT
VALLEY JUNCTION

NOTE —
POINT "A" PLACE WHERE MAN STARTED FROM WITH "AC" ROD.
POINT "B" PLACE OF ACCIDENT.
POINT "C" PLACE TO WHICH MAN CARRIED "AC" ROD.
GRASS.

ion, to present the issue of defendant having invited the use of these grounds by its employés in performing their duties and of having furnished these grounds as places for them to work.

[3] We are therefore of the opinion that the Court of Civil Appeals correctly disposed of the contentions of the defendant presented under its first, second, and third assignments of error as presented in its petition for writ of error. A careful consideration of the charge of the court leads us to the conclusion that the Court of Civil Appeals correctly disposed of the assignments with reference to paragraphs 5 and 6½ of the court's charge. Paragraph 6½, when considered in connection with the entire charge of the court, and in connection with the pleadings and evidence, is believed to be favorable to the defendant. When paragraph 6½ is considered in connection with paragraph 2 of the court's charge, it is clear that the court required the jury to find that the place at which plaintiff was injured was furnished as a place to work by defendant; that it was an unsafe place; that the defendant was negligent in keeping the premises safe; that the plaintiff was exercising ordinary care for his own safety, and then to find that the defendant knew that that portion of the ground was commonly used by plaintiff and other employés in the discharge of their duties under their employment before they could find the defendant liable, even though they should find that the premises were leased to the Gulf Coast News Company. While the charge is awkwardly prepared, yet it is believed to be sufficiently clear to present to the jury the issues involved, and that no injury to the defendant resulted therefrom.

The Court of Civil Appeals having correctly disposed of the various assignments, we are of the opinion that the judgment should be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.